IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| MICHAEL DAMON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|         v. | ) | Civil Action No. 3:25cv341 (RCY) |
| | ) | |
| TIGER AESTHETICS MEDICAL, | ) | |
| LLC, *et al.*, | ) | |
|     Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This is an employment dispute brought by Plaintiff Michael Damon, wherein Plaintiff alleges that Defendants failed to pay earned sales commissions in violation of the Virginia Wage Payment Act ("VWPA"), Virginia Code § 40.1-29(C). The case is before the Court on Defendant Extremity Care, LLC's Motion to Dismiss. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion.

**I. RELEVANT PROCEDURAL HISTORY**

Plaintiff commenced this action in the Circuit Court of Henrico County, Virginia, on March 3, 2025. Not. Removal ¶ 1, ECF No. 1. Defendants were properly served and timely removed the matter to this Court on May 5, 2025. *Id.* ¶ 2. Defendant Tiger Aesthetics Medical, LLC ("TAM") filed an Answer on May 12, 2025, ECF No. 6, and Defendant Extremity Care, LLC ("EC") filed the instant Motion to Dismiss on that same date, ECF No. 7. Plaintiff filed his response in opposition on May 27, 2025, ECF No. 11, and EC filed its reply on June 2, 2025, ECF No. 12. Thus, the Motion is fully briefed and ripe for disposition.

## II.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2).  *Id.* (citations omitted).   The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff.  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

2

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

### III.  FACTUAL ALLEGATIONS

Plaintiff alleges that he worked as a medical sales representative for TAM and EC. Compl. ¶ 1, ECF No. 1–1. TAM sent Plaintiff an offer letter in April 2024 and later presented him with a commission plan providing for percentage-based commissions on net sales. *Id.* ¶ 4. "During the course of [Plaintiff's] employment with TAM, his commission checks were paid from an EC bank account." *Id.* ¶ 3.

Plaintiff produced sales between May and October 2024, at which point "TAM terminated [his] employment" as part of a restructuring. *Id.* ¶ 7. Plaintiff was owed sales commissions at the time of his termination, but TAM failed to pay them after offsetting returned-product credits against his generated sales, without his permission. *Id.* ¶ 8. Plaintiff estimates that he is owed $60,000 for these unpaid commissions, but notes that sum might be greater. *Id.* ¶ 10. Based on these allegations, Plaintiff brings a single claim under the VWPA against both TAM and EC for failure to pay commissions earned, seeking damages of no less than $180,000. *Id.* at 4.

### IV. ANALYSIS

Plaintiff asserts one count under the VWPA against both Defendants for failure to pay earned commissions and seeks unpaid wages, liquidated damages, attorneys' fees, and costs. In the instant Motion, EC contends that TAM—not EC—was Plaintiff's "employer" as defined under § 40.1–2 of the VWPA, and therefore EC cannot be liable under the statute. Mem. Supp. Mot.

Dismiss ("Mem. Supp.") 3–4, ECF No. 8.  Plaintiff counters that EC does qualify as an employer because it paid his commissions, and such act—standing alone—is sufficient for EC to be considered an employer.  Pl's Resp. 4, ECF No. 11 ("EC was an additional or special employer inasmuch as it paid Damon's commissions.  *Harris* instructs that that fact is all the [sic] is necessary to consider EC an additional employer of Damon." (citing *Harris v. Washington & Lee Univ.*, 82 Va. App. 175 (2024))).  EC disagrees, positing that *Harris* requires more than mere payment.  Reply 3 ("*Harris* . . . does not hold that payment alone is dispositive.").

Thus, the issue before the Court is whether EC qualifies as Plaintiff's employer based on the sole factual allegation that EC issued Plaintiff's commission checks.  As explained below, the Court concludes that this allegation, without more, is insufficient to plausibly establish that EC qualifies as his employer under § 40.1–2 of the VWPA, and thus Plaintiff has failed to state a claim against Defendant EC.  Specifically, the Court is persuaded by EC's argument that *Harris* requires more than mere payment for one to qualify as an employer within the meaning of § 40.1-2 of the VWPA.

The VWPA makes it unlawful for employers to "withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."  Va. Code Ann. § 40.1-29(C).  The term "employer" is defined as follows:

> "Employer" means an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include **any similar entity acting directly or indirectly in the interest of an employer in relation to an employee**.

§ 40.1-2 (emphasis added).  While "similar entity" is not defined in the VWPA, the Virginia Court of Appeals has defined "similar entity" to include "those that 1) are the same type of entity as provided for in the 'employer' definition; 2) 'employ' the employee in question who works in

4

exchange for 'wages, salaries, or . . . commission'; and 3) owe some duty or have some form of privity with the principal entity." *Harris v. Washington & Lee Univ.*, 906 S.E.2d 128, 144 (Va. App. 2024).

With respect to the second requirement, Virginia utilizes the borrowed employee doctrine. *Id.* at 141 ("Hence, when interpreting the meaning of the term 'similar entity' in Code § 40.1-2, we hold that the unabrogated common law 'borrowed employee doctrine' governs our consideration of the meaning of the terms 'employer' and 'employee' as well as the mechanics of determining whether employers are 'similar entities.'"). This doctrine requires courts to examine four elements of the alleged employer-employee relationship: "(1) selection and hiring of the [employee]; (2) payment of his or her wages; (3) power of dismissal; and (4) power of control of the [employee's] actions." *Id.* (brackets in original). *Harris* makes clear that payment of wages is a "mandatory threshold condition that the putative borrowed employee must satisfy in order to be within the statute's protection." *Id.* at 142.

But once that threshold is satisfied, the analysis does not end; the employer must also demonstrate that at least some of the remaining common-law indicia of employment weigh in favor of an employment relationship. *Id.* (noting that, once payment of wages is demonstrated, "[t]he alleged borrowed employee may then show that an employment relationship existed through the evidence related to the other common law factors pertaining to which entity selected and hired the employee, which entity had the power to dismiss the employee, and which entity had the power to control the employee's actions"). Simply put, payment is a necessary condition—but not a sufficient condition. *See also Freitas v. Weatherby Locums, Inc.*, 2025 U.S. Dist. LEXIS 259127, at *6–7 (E.D. Va. Dec. 15, 2025) (assessing all four factors to determine whether an employer was a "similar entity," *after* finding the purported employer indirectly paid the employee within the meaning of the VWPA).

In the instant matter, Plaintiff expressly identifies TAM—not EC—as his employer. The factual allegations concerning the employment relationship are directed exclusively at TAM, while EC is mentioned only in passing.

*First*, Plaintiff alleges that TAM extended the offer letter and hired him. Compl. ¶ 4. The Complaint contains no allegation that EC participated in the hiring decision. *Second*, Plaintiff alleges that TAM—not EC—terminated his employment. *Id*. ¶ 7. *Third*, the Complaint is devoid of allegations that EC supervised Plaintiff, directed his sales activities, established performance expectations, or otherwise exercised control over the manner and means of his work. To the contrary, when Plaintiff sought payment of his commissions, he communicated only with TAM— the sole entity alleged to have applied sales credits and offset his earned commissions. *Id*. ¶ 8. *Fourth*, Plaintiff specifically alleges that TAM "refused to pay" him. *Id*. ¶ 9. Thus, every substantive allegation concerning hiring, supervision, compensation decisions, and termination is attributed to TAM alone.

Although Plaintiff states, in a conclusory fashion, that he "worked remotely for TAM and EC," *id*. ¶ 1, his only factual allegation concerning EC is that, "[d]uring the course of his employment **with TAM**, his commission checks were paid from an EC bank account," *id*. ¶ 3 (emphasis added).[1] While this factor is a threshold factor under *Harris*, that single allegation— without accompanying facts showing control or participation in the employment relationship—is insufficient to plausibly establish that EC functioned as Plaintiff's employer.

In sum, even accepting as true that EC issued Plaintiff's commission payments, every other alleged indicium of employment points exclusively to TAM—not EC. The Complaint therefore

---

[1] The Court notes that the parties dispute how EC's role in issuing Plaintiff's commissions should be characterized: Plaintiff alleges that EC "paid" him, Compl. ¶ 4, whereas EC contends it merely "processed his commission checks," Mem. Supp. 4. At this stage, the Court construes that allegation in Plaintiff's favor. Even so, the distinction is immaterial. Whether EC "paid" or "processed" the commissions, that fact alone—absent additional indicia of hiring, supervision, control, or termination authority—does not plausibly establish an employer relationship.

fails to plausibly allege that EC "employed" Plaintiff within the meaning of Va. Code § 40.1–2. Plaintiff's contention that payment alone is dispositive overreads *Harris*; in that case, the Virginia Court of Appeals expressly preserved the borrowed-employee framework and required consideration of additional indicia of an employment relationship.[2]

## V. CONCLUSION

Because the Complaint fails to plausibly allege that EC employed Plaintiff for purposes of the VWPA, and because the VWPA is the only avenue by which Plaintiff seeks to recover in this action, Plaintiff fails to state a claim against EC. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that *the defendant* is liable for the misconduct alleged." (emphasis added) (citing *Twombly*, 550 U.S. at 556)). As such, EC's Motion to Dismiss will be granted, and EC will be dismissed from this action.

An appropriate Order shall issue.

/s/
Roderick C. Young
United States District Judge

Date: March 16, 2026
Richmond, Virginia

---

[2] In addition to failing on the second *Harris* prong, the Complaint also fails to allege facts to satisfy the third *Harris* prong: it contains no factual allegations suggesting that EC owed Plaintiff any duty or stood in privity with TAM with respect to Plaintiff's employment. This failing is similarly dispositive with respect to establishing that EC qualifies as an "employer" for purposes of the VWPA. *Harris*, 906 S.E.2d at 144 (listing predicates to identifying a "similar entity" and separating the elements with "and").